# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

LORIMAR MUSIC A CORP. et al., )
)
                  Plaintiffs, )
)
v. ) No. 09-6067-CV-SJ-FJG
)
BLACK IRON GRILL COMPANY, et al., )
)
                  Defendants. )

## AMENDED ORDER

Plaintiffs filed the instant suit for copyright infringement based on the defendants' public performances of copyrighted musical compositions. Currently pending before the Court is plaintiffs' Motion for Summary Judgment (Doc. No. 29).

## I.      BACKGROUND[1]

Plaintiffs Lorimar Music A. Corp., Duke of Earle, Primary Wave Earl, Robert Lee McDill d/b/a Ranger Bob Music, Universal-Polygram International Publishing, Inc., Bon Jovi Publishing, Richard Sambora d/b/a Aggressive Music, Van Halen Music, WB Music Corp., Sony/ATV Cross Keys Publishing and Hideout Records and Distributors, Inc. (Gear Publishing Division), are owners of the eight (8) copyrighted musical compositions in this copyright infringement action against Black Iron Grill Company,

---

[1]Local Rule 56.1(a) provides, "All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." As defendants have not specifically controverted any of the facts set forth in plaintiffs' Statement of Uncontroverted Material Facts (Doc. No. 29), all facts are hereby adopted as set forth therein. See Jones v. United Parcel Service, Inc., 461 F.3d 982, 990-91 (affirming district court's exclusion of controverted facts set forth in non-movant's pleading for failure to plead in accordance with Local Rule 56.1).

Richard and Kim DeBuhr.[2]  Each plaintiff has demonstrated ownership of the

copyrighted musical compositions by providing certified copies of copyright registration

certificates, assignments and other documents which indicate copyright ownership.

Black Iron Grill Steakhouse and Saloon opened in Rock Port, Missouri, in

December 2007.  Richard DeBuhr is president of the corporation and Kim DeBuhr is

secretary and vice president of the corporation.  Richard and Kim each own one-half of

the shares of the corporation, and both have authority to manage employees and make

policy decisions regarding the operation of Black Iron Grill.  There are no other owners,

operators, controllers or managers.  The establishment offers food and musical

entertainment, including karaoke disc jockeys.

Plaintiffs are members of the American Society of Composers, Authors and

Publishers (ASCAP), to which they have granted a non-exclusive right to license non-

dramatic public performances of their copyrighted musical compositions.  ASCAP in turn

licenses a variety of music users, including restaurants and other establishments,

whose owners desire to publicly perform  copyrighted songs in the ASCAP repertory.

On or about July 24, 2008, ASCAP sent a letter to Richard DeBuhr, explaining ASCAP's

role in licensing music users for their public performances of its members' copyrighted

musical works.  The letter offered Black Iron Grill a the opportunity to purchase a license

and enclosed the appropriate forms.  On or about August 5, 2008, an ASCAP

representative called Mr. DeBuhr to follow up on its license offer.  Mr. DeBuhr stated

---

[2](1) "Guitar Town," "Copperhead Road," (3) "Louisiana Saturday Night," (4) "Baby's Got Her Blue Jeans On," (5) Wanted Dead or Alive," (6) "Dance the Night Away," (7) "Redneck Woman," and (8) "Turn the Page."

that he had received the July 24, 2008 letter, but did not intend to purchase a license.

ASCAP sent a second letter to Mr. DeBuhr on August 6, 2008, addressing Mr. DeBuhr's

refusal to obtain a license and informed him of the serious consequences of

unauthorized performances of copyrighted musical works, including the potential for

statutory damages. The letter provided the necessary forms for obtaining an ASCAP

license, as well as more information regarding ASCAP's function in the music industry.

On or about August 11, 2008, Mr. DeBuhr telephoned an ASCAP licensing

representative and asked the representative to have ASCAP "stop harassing him," and

followed this request with a physical threat against the representative. On or about

August 18, 2008, an ASCAP representative left a detailed message for Mr. DeBuhr

regarding the necessity and benefits of an ASCAP licensing agreement, and on August

19, 2008, ASCAP sent Mr. DeBuhr a third letter offering a final opportunity to secure a

license before referring the matter to ASCAP's legal counsel to proceed with litigation.

Public performance of the eight songs in question took place on the night of

March 19-20, 2009. ASCAP investigator Dennis Sichner visited the Black Iron Grill, and

observed the music performances by means of a disc jockey using karaoke equipment.

Mr. Sichner prepared a report and submitted an affidavit in support of plaintiffs' motion

detailing his observation of the infringing acts. Richard DeBuhr stated he had no

personal knowledge or record of the songs performed at the Black Iron Grill on March

19-20, 2009.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of

law.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  The facts and inferences are viewed in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986).  The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997).  To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved.  Lower Brule, 104 F.3d at 1021.  Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment.  Id. Rather, "the disputes must be outcome determinative under prevailing law."  Id. (citations omitted).   Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts."  Matsushita, 475 U.S. at 586.  Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327

## III.    DISCUSSION

## A.  Copyright Infringement

In order to establish a prima facie case for infringement of copyright in musical

compositions, a plaintiff must prove the following five elements:

> (1) the originality and authorship of the compositions involved;

> (2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

> (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

> (4) that the compositions were performed publicly for profit [by the defendants]; and

> (5) that the defendants had not yet received permission from any of the plaintiffs or their representatives for such performances.

Collins Court Music, Inc. v. Pulley, 704 F. Supp. 963, 964 (W.D. Mo. 1988) (citing Van

Halen Music v. Palmer, 626 F. Supp. 1163, 1165 (W.D. Ark. 1986)).

"A prima facie case as to the first three elements may be made by submitting

certified copies of copyright registration certificates and any subsequent assignments."

Id. (citing Fourth Floor Music, Inc. v. Der Place, Inc., 572 F. Supp. 41, 43 (D. Neb.

1983)).  In support of their Motion for Summary Judgment, plaintiffs submitted copies of

the copyright registration certificates for each of the eight songs, as well as any

subsequent assignments and other documents which demonstrate copyright ownership

of the songs involved in this action.  With this evidence, plaintiffs have proven the first

three elements of the five-element test to establish infringement of copyright in musical

compositions.  See Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887

F. Supp. 219, 222 (E.D. Mo. 1995) (certified copies of copyright registration certificates

for each of the songs at issue established validity of plaintiffs' copyrights).

Next, the Court must determine whether defendants publicly performed the musical compositions. Independent investigator, Dennis Sichner, provided an affidavit and report stating the eight songs were performed by means of the Karaoke disc jockey on the night of March 19-20, 2009. Defendants have not rebutted the investigator's evidence, other than Mr. DeBuhr's testimony that he does not recall the musical selections played on March 19-20, 2009. Where no contrary evidence is offered or other evidence exists to create reasonable doubt, an investigator's unrebutted affidavit is prima facie evidence of public performance. See id. (unrebutted affidavits established unauthorized public performance of the compositions in question). As defendants have offered no contrary evidence, Mr. Sichner's uncontroverted affidavit satisfactorily proves defendants publicly performed the songs in question.

The last element is whether defendants had permission for public performance of the eight songs at issue. "To legally publicly perform copyrighted musical material one must either obtain permission to do so from the owner(s) of the copyrights or from the owner's representatives." Collins, 705 F. Supp. at 965. Here, there is no question that Black Iron Grill does not possess a license to perform songs in the ASCAP repertory, and it did not otherwise obtain permission from the individual copyright owners.

Based on satisfaction of the five elements required, the Court finds plaintiffs have established a prima facie case for music copyright infringement.


**B.    Fair Use**

In response to plaintiffs' charges of infringement, defendants argue the performance of karaoke is a parody and constitutes protected, fair use under 17 U.S.C.

6

§ 107.  Defendants claim karaoke performance significantly changes the character of

the song because the lyrics or music of the song is no longer the focus, but instead, "the

performance attempt of the singer becomes the focus."  (Doc. No. 38).

The fair use doctrine allows courts to avoid rigid application of the copyright

statute "when, on occasion, it would stifle the very creativity which that law is designed

to foster."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575 (1994).  Fair use may

include reproduction in copies for purposes such as criticism, comment, news reporting,

teaching, scholarship, or research.  17 U.S.C. § 107.  In determining whether the use

made of a work in a particular case is a fair use the factors considered shall include-

> (1) the purpose and character of the use, including whether such
> use is of a commercial nature or is for nonprofit educational
> purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to
> the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the
> copyrighted work.

17 U.S.C. § 107.

Where no material facts are in dispute, fair use protection on parody grounds is

appropriately decided on summary judgment.  Morganactive Songs v. K&M Fox, Inc., 77

U.S.P.Q. 2d 1064, 1068 (S.D. Ind. 2005).  A parodic work has to "work its way through

the relevant factors, and be judged case by case, in light of the ends of copyright law."

Campbell, 510 U.S. at 581.

The threshold issue in determining whether parody of copyrighted work is "fair

use," is whether the new work "adds something new to the original creation, with a

further purpose or different character, altering the first with new expression, meaning or message. . . ." toward furthering the goal of copyright, which is to promote science and the arts.  Campbell, 510 U.S. at 579 (internal citations omitted).  Because the karaoke singer is merely performing the underlying copyrighted song but does not create new work that develops the meaning or message, or comments or criticizes the copyrighted work, the karaoke performance is not a parody in the legal sense.  See Morganactive 77 U.S.P.Q.2d at 1068 (citing Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 801 (9th Cir. 2003)).

The remaining considerations include the nature of the copyrighted work, the amount used and the effect on the market of the copyrighted work.  The nature of the copyrighted work, a musical composition, lies within the "core of copyright's protective purposes" of fostering art, and as such it is deserving of strict copyright protection.  Id. In karaoke performances, the entire song is usually performed, thus making use of the entire copyrighted work and weighing against fair use.  Finally, the court considers the effect of the use on the market for the original.  Admittedly, karaoke performance of copyrighted songs is highly unlikely to erode the market demand for the original works. But see id. at 1068-69 (noting if karaoke were protected as a fair use parody it would erode the market for licensed use of copyrighted compositions).

Based on the foregoing analysis, the Court flatly rejects defendants' argument that a karaoke rendition of the copyrighted songs is a parody that constitutes fair use. Simply put, the performance is not a criticism of the original work or artist and "[t]his is not parody, but solely imitation."  Id. at 1068.

**C.    Liability of Corporate and Individual Defendants**

"Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable." Cross Keys, 887 F. Supp. 219 at 222 (citing Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir. 1972)). The prerequisites for vicarious liability for copyright infringements are: (1) the right and ability to supervise the infringing activity; and (2) an obvious and direct financial interest in exploitation of copyrighted materials. RCA/Ariola Intern., Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir. 1988).

Black Iron Grill Co. is an S-Corporation that owns and operates Black Iron Grill, a restaurant and bar. Thus, the defendant corporation is liable for the infringing performances. See Cross Keys, 887 F. Supp. at 223. With regard to the vicarious liability of Richard and Kim DeBuhr, the Court's analysis focuses on their individual actions and responsibilities in connection with the infringing activity. As officers and directors of Black Iron Grill, Mr. and Mrs. DeBuhr generally share joint responsibility for the control, management, operation and maintenance of the affairs of the company. They each testified in their deposition that they have the ability to tell employees what to do and have the power to hire and fire employees. The inquiry for vicarious liability, however, is individual, thus requiring a closer look at Richard and Kim's individual responsibilities as set forth in the record.

Richard DeBuhr testified that he is the manager of Black Iron Grill and identified himself as exclusively handling the licensing for Black Iron Grill. He further explained that Black Iron Grill has music in the form of karaoke and live bands. He stated that he is responsible for hiring both the bands and the karaoke service. As an owner of half the shares of the corporation, Mr. DeBuhr has a financial interest in the use of

copyrighted materials by way of profits generated from karaoke nights at Black Iron Grill. Applying the uncontroverted facts, the Court finds Mr. DeBuhr had the requisite control and financial stake to make him jointly liable with the Black Iron Grill, Co. for the infringing activities.

Next, Mrs. DeBuhr appears to have less formal responsibilities and spends less time at the Black Iron Grill. Yet, she stated in her deposition that as an owner and shareholder, she has the ability to tell employees what to do and employees at the restaurant generally follow her orders. Thus, Mrs. DeBuhr possesses the right and ability to supervise the infringing activity, here, performance of copyrighted songs by means of karaoke, and is vicariously liable regardless of whether she exercised her right to do so. As owner of the other half of the shares of the corporation, Mrs. DeBuhr also has a clear financial interest at stake.

## IV.    RELIEF

Plaintiffs seek three forms of relief provided by United States Copyright Law, 17 U.S.C. §§ 502, 504, and 505. Specifically, plaintiffs request (1) a permanent injunction prohibiting further infringing performances of any or all music in the ASCAP repertory; (2) statutory damages of $4,000 per infringement; and, (3) plaintiffs' costs, including reasonable attorney's fees.

### A.    Injunctive Relief

17 U.S.C. § 502(a) provides:

> Any court having jurisdiction of a civil action arising

> under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

"It is generally recognized that a plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and there is a threat of continuing violations." Halnat Pub. Co. v. L.A.P.A., Inc., 669 F. Supp. 933, 938 (D. Minn. 1987). There is no evidence that Black Iron Grill has a history of infringing activity prior to the events giving rise to the instant lawsuit. On the other hand, plaintiffs produced evidence that defendants have engaged in infringing performances of ASCAP copyrighted works as recently as June 24-25, 2010. Dennis Sichner's supplemental report indicates that at least nine songs from the ASCAP repertory were performed without authorization on June 24-25, 2010.

The Court finds an injunction is appropriate because the evidence suggests defendants have disregarded the legal requirement to obtain a license to publicly perform any copyrighted musical compositions and have engaged in infringing performances during both of Sichner's visits to the Black Iron Grill. Therefore, defendants are enjoined from playing any of plaintiffs' copyrighted songs at the Black Iron Grill until defendants enter a proper licensing agreement with ASCAP and pay licensing fees for the rights to perform ASCAP-member copyrighted musical compositions.

### B. Statutory Damages

Under the Copyright Act, the copyright owner may elect to recover an award of statutory damages instead of actual damages and lost profits. 17 U.S.C. § 504(c)(1).

For each non-innocent infringement, the court must award "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "Within these statutory limits, the assessment of damages lies within the court's sound discretion and sense o f justice." Halnat, 669 F. Supp. 933 at 937. Among the factors to be considered in awarding statutory damages are: (1) the expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent. Cross Keys, 887 F. Supp. at 224. Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that "it costs less to obey the copyright laws than to violate them." Id. (citing Music City Music v. Alfa Foods, Ltd., 616 F. Supp. 1001, 1003 (E.D. Va. 1985)); see also F.W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952) (recognizing the statutory rule of copyright policy "is designed to discourage wrongful conduct").

Here, defendants would owe approximately $10,241.00 in license fees and interest, had they been properly licensed from August 2008 through 2010.[3] Plaintiffs instead urge the court to award damages of $4,000 per infringement for a total of $32,000, which is approximately three times the license fees that would have been owed, plus the investigation costs. Plaintiffs argue that defendants have persisted in knowingly and deliberately infringing plaintiffs' copyrights, despite ASCAP's repeated attempts to inform plaintiffs of their need to obtain a license. Plaintiffs also point to defendant Richard DeBuhr's physical threat towards an ASCAP representative as

---

[3]The current applicable license fee is $4,263 per annum (Doc. No. 29, Exh. 2). Plaintiffs have not disclosed the applicable rate of interest.

demonstrating defendants' disregard of their legal obligations.

Defendants respond that, despite plaintiffs' allegations, they do not continue to deliberately violate the law. Richard DeBuhr stated in his affidavit that from the date of the filing of the lawsuit, he and the Black Iron Grill have taken all prudent and necessary steps to insure that ASCAP-licensed music is not performed at the Black Iron Grill. Mr. DeBuhr further states that Black Iron Grill has operated at a loss since its inception and an extensive award of damages could cause it to go bankrupt.

The Court finds sufficient evidence that defendants disregarded their obligation under the Copyright Act to obtain a proper license to publicly perform plaintiffs' copyrighted works. As evidenced by three letters and various telephone calls, ASCAP made a sustained effort to inform defendants of their obligations under the law, yet, defendants have produced no explanation as to why they refused to obtain a license once they became apprised of their legal obligations. Furthermore, the recent evidence that copyrighted songs were publicly performed at the Black Iron Grill as of June 23-24, 2010, discredits Mr. DeBuhr's statement that he has taken the proper measures to protect against infringing activity at the Black Iron Grill. Plaintiffs have not shown defendants reaped any profit or that plaintiffs have lost any revenues in connection with the infringement; however, the record suggests defendants' infringement became knowing and willful over time. Based on the foregoing considerations, the Court finds an award of $1,300 per infringement, for a total statutory damage award of $10,400, is appropriate.

### C.    Attorney's Fees and Costs

Plaintiffs request the Court award attorney fees under the fee-shifting provision

set forth in 17 U.S.C. § 505,[4] which allows the court in its discretion to allow the recovery of full costs by or against any party. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 122 (8th Cir. 1987). In support, plaintiffs argue that defendants have continued to violate the Copyright Law and also "cannot come forward with any justification for his actions or any 'colorable grounds' for a defense." (Doc. No. 29). A court may consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," and consideration of such factors should be "faithful to the purposes of the Copyright Act." Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 (1994).

In light of the evidence and defendants' disregard for their legal obligations under the Copyright Act, the Court concludes an award of costs and fees is appropriate. Counsel for plaintiffs has submitted an affidavit and submitted billing records *in camera* detailing the amount of time spent in preparing and prosecuting this case. The Court finds the time spent necessary and the amounts charged reasonable in view of the quality of services rendered. The Court therefore awards plaintiffs $33,223.5 for attorney's fees and $2,002.56 in court costs and expenses for a total award of $35,226.06.

## V.    CONCLUSION

Based on the foregoing, the Court finds defendants Black Iron Grill Company,

---

[4]In any civil action under this title, the court in its discretion may allow the recover of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attoerney's fee to the prevailing party as part of the costs. 17 U.S.C § 505 (2009).

Richard DeBuhr and Kim DeBuhr jointly and severally liable for eight acts of copyright

infringement for the public performance of eight copyrighted musical compositions.

Accordingly, plaintiffs' Motion for Summary Judgment is **GRANTED**.

      **IT IS FURTHER ORDERED** that defendants are enjoined from public

performance of any copyrighted musical compositions in the ASCAP repertory until

defendants enter a proper license agreement with ASCAP.

      **IT IS FURTHER ORDERED** that plaintiffs are awarded statutory damages in the

amount of $10,400 and attorney's fees and costs in full in the amount of $35,226.06, for

a total award of $45,626.06.


**IT IS SO ORDERED.**

Date:  07/29/10                              **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                   Fernando J. Gaitan, Jr.
                                         Chief United States District Judge